**Annie WHITE, Appellant,**

v.

**YELLOW CAB COMPANY et al., Appellees.**

**No. 6020.**

Court of Civil Appeals of Texas.

Beaumont.

Dec. 29, 1955.

Rehearing Denied Jan. 18, 1956.

John T. Lindsey, Port Arthur, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellees.

ANDERSON, Justice.

Vernon White was killed June 6, 1953, about 11:30 p. m., when a motorized bicycle on which he was riding was in collision with a taxicab at the intersection of Proctor Street and Houston Avenue, in the city of Port Arthur. His widow and minor children brought this suit to recover damages they allege they sustained as a result of his death. They sued both the driver of the cab, Joseph Hanks, and the cab's owners,

John J. and Kyle C. Elam. Trial to a jury resulted in a verdict on which judgment was rendered that plaintiffs take nothing, and the plaintiffs have appealed.

The taxicab and the deceased were travelling in opposite directions along Houston Avenue as they approached and entered the intersection, the taxicab proceeding northward. The front end of the bicycle struck the left light and fender of the cab, apparently at an angle, and the deceased was evidently catapulted against the windshield of the cab before being thrown to the pavement. The front wheel of the bicycle was torn off and remained lodged between the bumper and wheel of the cab, and the left side of the windshield of the cab was broken out.

As acts of alleged negligence, plaintiffs charged in various ways that the driver of the taxicab was not keeping a proper lookout, was driving at an excessive rate of speed, pulled to his wrong side of the street, undertook to turn left without having signalled his intention of doing so and at a time when he could not do so safely, failed to have his car under proper control, and failed to apply his brakes. The defendants took the position, in effect, that the deceased was guilty of the selfsame acts which plaintiffs charged to the driver of the taxicab, and was furthermore riding without lights on his vehicle.

Except for finding that he failed to keep a proper lookout as he approached and entered the intersection, the jury failed to find that the driver of the taxicab had been guilty of any of the acts of commission or omission which plaintiffs alleged he had been guilty of and which were alleged to have amounted to negligence. In other words, except for the issue regarding lookout, all special issues with respect to whether the driver of the taxicab had done or had failed to do certain things—i. e., had been guilty of the primary act of alleged negligence—were answered in the negative, or in favor of the defendants. Furthermore, while it found that the cab driver failed to keep a proper lookout as he approached and entered the intersection, and that this was negligence, the jury failed to find that such act of negligence was a proximate cause of the collision. The issue regarding proximate cause was answered in the negative. There were, therefore, no jury findings on which judgment could have been rendered in favor of the plaintiffs.

However, even though the cab driver's negligence in failing to keep a proper lookout had been found to have been a proximate cause of the collision, judgment for the plaintiffs still would have been precluded by findings that in a variety of ways the deceased was guilty of negligence that proximately caused his death. The jury found that deceased turned his motorbike without first seeing that he had sufficient space within which to do so safely, turned to his left when the taxicab was so close as to constitute an immediate hazard, had no headlamp burning, drove his motorbike to the left of the center of the street and was negligent in so doing, and failed to maintain proper control of his motorbike. Each of these acts, except deceased's failure to have the headlamp on his motorbike lighted, was also found to have been a proximate cause of the collision.

By their points of error two through eight, appellants urge that despite the jury's failure to find that the cab driver's negligence in failing to keep a proper lookout was a proximate cause of the collision, and its findings that the deceased was himself guilty of various acts of negligence that were proximate causes of his death, the trial court erred in rendering judgment for the defendants. Strictly construed, the points are clearly without merit, because no other judgment could have been rendered on the verdict. However, appellants apparently seek to urge that the evidence established, as a matter of law, that the cab driver's negligence in failing to keep a proper lookout was a proximate cause of the collision, and that there was no evidence to support the various findings of the jury that the deceased was himself guilty of negligence that proximately caused his death. So construed, the points

are still without merit, and they are overruled.

■ The evidence not only failed to establish conclusively that the cab driver's negligent failure to keep a proper lookout was a proximate cause of the collision, but amply supported the various findings that the deceased was himself guilty of negligence that did proximately cause it. Both the cab driver and another who was driving behind him, E. W. Wyble, testified that the taxicab was well on its side of the center of the street when the collision occurred and that up until the moment of impact it had not deviated from a straight course. This being so, the deceased, who just before the moment of impact had been on his proper side of the center of the street necessarily must have turned toward the cab and crossed the center of the street, for otherwise there would have been no collision. The physical facts—i. e., the manner in which the bicycle struck the cab and the imprint it made—lend support to this theory, and there was nothing to indicate the contrary except the fact that the body of the deceased and perhaps the bulk of the glass shattered in the collision, as well as most of the blood that was seen on the pavement, lag west of the center of the street, or on deceased's proper side of it. These circumstances can all be attributed to the force of the impact and are not necessarily inconsistent with the theory that the two vehicles collided east or on the cab's side of the center of the street. One or more of the witnesses called by plaintiffs also testified to a mark on the pavement, about two feet west of the center of the street. It commenced, according to the evidence, somewhere near where the two vehicles met, and extended northward about twenty feet. There was no definite showing, however, as to what caused the mark, and it clearly cannot be taken as conclusive proof that the collision occurred west of the center line. If made by some dragging part of the bicycle it could have been made by a rearward part which in the very nature of things extended west of the center line, or the taxicab could have momentarily crossed the center line after the collision had occurred. Assuming that the deceased turned or undertook to turn left just before the moment of impact, as the jury found he did, the fact that he had insufficient space within which to do so safely, as well as that the taxicab was then so near at hand as to constitute an immediate hazard, is self-evident. And the jury was at liberty to conclude from the evidence that because the deceased suddenly and unexpectedly turned toward the taxicab, the cab driver could not have avoided the collision, even though he had seen the deceased long before the latter reached the intersection and had watched him continuously during his approach. They were therefore justified in not finding that the cab driver's failure to keep a proper lookout was a proximate cause of the collision.

Appellants' remaining point, point one, complains of the trial court's failure to grant their motion for a new trial because of alleged jury misconduct. It was charged that during the noon hour of the second day of the trial one of the jurors, James H. Mallet, was twice seen conversing with two of the defendants, Joseph C. Hanks and Kyle C. Elam, and that on the following day another of the jurors, Leroy V. Homuth, was seen conversing with the same two defendants. It was charged in the motion that the jurors and the defendants were off to themselves while talking together, and were talking earnestly and in low tones. Appellants also alleged it to be their beliefs that the jurors and the defendants were discussing the case. The juror Homuth was also alleged to have testified falsely while being examined as a prospective juror, in stating that he was not acquainted with any of the defendants.

At the hearing on the motion plaintiff Annie White testified to having seen the juror Mallet conversing with the defendants on two occasions, once in the corridor of the second floor of the courthouse and again in the corridor of the first floor. Her attorney testified likewise and to hav-

ing also seen the juror Homuth talking with the defendants. However, neither the plaintiff nor her attorney testified to any furtive conduct on the part of either of the jurors and the defendants. The attorney testified that he thought nothing of it when he saw it. And neither of the incidents was reported to the trial court until after the jury had returned its verdict. The matters were first raised by appellants in their motion for new trial.

The juror Mallet admitted that he passed a few words with defendant Elam in the corridor of the second floor of the courthouse, but denied that he saw or talked with either of the defendants in the corridor of the first floor. He said he chanced to be walking near Elam as they left the courtroom on the second floor at noon of the second day of the trial and that Elam asked him how the shrimp business was doing. He said the two of them then paused momentarily and talked briefly about shrimp, before entering an elevator. The juror Homuth admitted having been one of a group of five or six which included the two defendants and to have engaged in conversation with the group generally. He denied having had any other conversation with either of the defendants during the trial, and said the subject of conversation among the group was a prize fight that was about to be staged. Both jurors denied that they discussed the case with either of the defendants and there was no evidence to show that they did discuss it. The juror Homuth admitted that he knew Elam by sight, from having seen him officiate in football games, but denied that he had met him prior to the trial.

In its order overruling the motion for new trial, the trial court expressly found that the juror Homuth had truthfully answered the questions propounded to him on voir dire examination; that neither the juror Mallet nor the juror Homuth had discussed the case or any matters relevant to it with any of the defendants during the course of the trial; that neither of the said jurors had been guilty of any of the alleged acts of misconduct charged against them in plaintiffs' motion; and that by failing to complain of the alleged acts of misconduct at the time they occurred and before verdict, plaintiffs waived their right to complain of them. The findings are not attacked as being without support in the evidence.

■■ Under the findings so made, we think no misconduct was shown. Anderson Bros. v. Parker Const. Co., Tex.Civ.App., 254 S.W. 642; Swanson v. Fort Worth Transit Co., Tex.Civ.App., 209 S.W.2d 772; Andrews v. Dewberry, Tex.Civ.App., 242 S.W.2d 685. We are furthermore of the opinion that since plaintiff Annie White and her attorney both had knowledge of the incidents at the time they occurred and failed to call them to the trial court's attention until after the jury had returned its verdict, plaintiffs waived their right to complain of the matters. Insurors Indemnity & Insurance Co. v. Brown, Tex.Civ. App., 172 S.W.2d 174; Andrews v. Dewberry, Tex.Civ.App., 242 S.W.2d 685.

The appellants principally rely upon the case of Gulf, C. & S. F. R. Co. v. Schroeder, Tex.Civ.App., 25 S.W. 306, to support their claim of reversible error. It will be noted, however, that in that case the Court of Civil Appeals concluded that the evidence was sufficient to establish that the juror and the party had discussed the suit. The trial court here found and was justified in so doing, that neither the suit nor anything relevant to it was discussed; and we are bound by such finding.

No reversible error having been shown, the judgment of the trial court is affirmed.