**Esteline Aleta McVICKER, Appellant,**

v.

**JOHNSON COUNTY, Texas, Appellee.**

**No. 6296.**

Court of Civil Appeals of Texas,
Waco.

May 7, 1981.
Rehearing Denied May 28, 1981.

Lowell E. Dushman, Jack Friedman, Dushman, Friedman & Gray, Fort Worth, for appellant.

Dan Boulware, County Atty., Jack C. Altaras and Curtis Pritchard, Altaras, Altaras & Pritchard, Cleburne, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Esteline McVicker from a take-nothing judgment in her suit against defendant Johnson County.[1]

Plaintiff McVicker sued defendant Johnson County under the Texas Tort Claims Act (Article 6252–19 VATS), for the death of her husband and her personal injuries.

Plaintiff alleged that on June 10, 1975 at 5:10 A.M. she and her husband were driving their pickup truck west on County Road 705 just east of its intersection with the head of Buffalo Creek, in Johnson County, when the vehicle was swept off the crossing and propelled downstream by flooding waters of Buffalo Creek, causing injury to plaintiff and drowning her husband. Plaintiff alleged the crossing was hazardous and unsafe during periods of rainfall in the area; that the road would flood during such periods; and that defendant's agents and employees knew of such. Plaintiff further alleged Johnson County through its officers and employees negligent in a number of particulars proximately causing her injuries.

Defendant answered by general denial; plead plaintiff and decedent were well acquainted with the road; assumed the risk of traveling the road when it was covered with water for several hundred feet; that the condition of the road at the time of the occurrence was open and obvious; and that plaintiff and decedent were negligent in a

1. See *McVicker v. Johnson County*, CCA (Waco) NRE, 561 S.W.2d 610 for prior appeal of this case.

number of particulars proximately causing their injuries and damages.

Trial was to a jury which made findings summarized as follows:

1) When the crossing was flooded on prior occasions it was not occasionally dangerous for use by the traveling public.

4) The flooding of the crossing at the time of the occurrence obstructed the roadway.

5) The obstruction of the roadway at the time of the occurrence made the crossing dangerous for use by the traveling public.

6) On June 10, 1975, before the occurrence, Johnson County did not know (or should not have known) of the flooded condition of the crossing.

7) Before the occurrence Johnson County failed to install: a) a flood gauge; b) warning signs; c) guard rails; d) guard posts; e) barricades.

8) None of the County's omissions above was negligence.

9) None of the foregoing was a proximate cause of the occurrence.

10) Esteline McVicker was not injured as a result of the occurrence.

11) Johnson County did not have actual notice within 6 months after date of the occurrence that Esteline McVicker had received injury.

12) Joe McVicker and Esteline McVicker had a joint interest in the trip and an equal right to control each other in the operation of the vehicle.

13) Joe McVicker was negligent in driving the pickup into the flood water crossing the road.

14) Such negligence was a proximate cause of his death.

15) Joe McVicker failed to ascertain the approximate depth of the water over the crossing before driving into the flood water.

16) Such was negligence.

17) And a proximate cause of his death.

18) Joe McVicker failed to keep a proper lookout to determine how high the water was on the pickup as he drove through the water.

19) Such was a proximate cause of his death.

20) Esteline McVicker knew the road was flooded at the time Joe McVicker drove the pick up into the flood water on the road.

21) Esteline McVicker failed to keep a proper lookout to ascertain the height to which the water was on the pickup as the vehicle proceeded toward the crossing.

22) Such was a proximate cause of her injuries.

23) Esteline McVicker failed to ascertain the approximate depth of the water over the crossing before the pickup proceeded into the flood water.

24) Such was negligence.

25) And a proximate cause of her injuries.

26) On the occasion Esteline McVicker insisted that Joe McVicker drive into the flood water.

27) Such was negligence.

28) And a proximate cause of the occurrence.

29) The sum of money to reasonably compensate Esteline McVicker for her injuries resulting from the occurrence:

a) Past pain and mental anguish: NONE.

b) Future pain and mental anguish: NONE.

c) Past loss of earning capacity: NONE.

d) Future loss of earning capacity: NONE.

30) The reasonable medical expenses for Esteline McVicker in past treatment of her injuries resulting from the occurrence: NONE.

31) Future medical expenses resulting from the occurrence: NONE.

32) Money which would fairly compensate Joe McVicker for his conscious pain and mental anguish suffered before his death: NONE.

33) Reasonable expenses for funeral and burial of Joe McVicker: NONE.

34) Money which would fairly compensate Esteline McVicker for her loss resulting from death of Joe McVicker, considering: care, maintenance, support, services, advice, counsel and contributions: NONE.

35) Percentage of negligence that caused the occurrence which is attributable to each of the parties: Johnson County 0%; Joe McVicker 50%; Esteline McVicker 50%.

The trial court overruled plaintiff's motion to disregard jury findings; overruled plaintiff's motion to reconsider rulings on previous motions for mistrial; granted defendant's motion for judgment on the verdict; and rendered judgment plaintiff take nothing.

Plaintiff appeals on *57 points* summarized as 3 main contentions.

Contention 1 asserts the trial court erred overruling plaintiff's motions for mistrial by reason of misconduct of defendant's officials: (1) In mingling with the jury panel, physically hugging of or by one of the jury panel members and purposely creating a special feeling of friendship with the jury; 2) attempting to confer a special favor upon one of the members of the jury and in the presence of other jury members and purposely creating a special feeling of gratitude with the jury.

The first act of alleged misconduct occurred before voir dire. The jury panel was in process of assembling. Counsel for plaintiff moved for mistrial "because * * I saw [jury panel member Crawford] hugging one of the parties involved in this case [former County Commissioner Hadley]". The trial court stated: "Your motion for mistrial is overruled. You can interrogate Mr. Crawford when you get back about his relationship with any of the parties". Counsel for plaintiff then said: "I must insist on my motion for mistrial on this basis, their comingling between jurors and witnesses on behalf of the defense". The trial court then stated: "Your motion for mistrial is overruled period. Now, if you want to

prove what happened, prove it from the witness stand and not by what you say in here".

Out of the presence of the jury panel counsel for plaintiff testified that he observed "witnesses, County employees * * * sitting among the jurors. I further observed that as the jurors were excused for the reshuffling of their names for the jury panel, that one of the jurors * * * was hugging Commissioner, former Commissioner O. B. Hadley and talking very friendly with him * * * I really don't have any reason to believe it was other than a friendly greeting with a hug, * * it is obvious there is a comradeship there * * * its obvious they are well acquainted".

The court again overruled plaintiff's motion for mistrial.

Jury panel member Crawford was not taken on the jury.

The second act of alleged misconduct occurred during a recess during the course of the trial. Counsel for plaintiff called County Commissioner Lambert as a witness out of the presence of the jury. Commissioner Lambert testified that after the jurors went into recess he "asked them whether or not the seats were hard or whether [we] needed to buy new cushions for their comfort in the jurors chairs", and that "[he] was laughing and cajoling with them, being quite friendly". Counsel for plaintiff then moved for a mistrial on the "basis there has been mingling with the jurors * * * and that's highly prejudicial".

The trial court overruled the motion for mistrial.

■ The party complaining about jury misconduct has the burden to prove the overt act of misconduct, that it was material misconduct, and "from the record as a whole that injury probably resulted". Rule 327 TRCP; *Crawford v. Detering Co.*, 150 Tex. 140, 237 S.W.2d 615; *Fountain v. Ferguson*, Tex., 441 S.W.2d 506.

*Fountain*, supra, holds the term "the record as a whole" means the complete record in the case; and that a consideration of the state of the evidence on the main trial is

sustained as a basis for treating jury misconduct as immaterial and harmless. See also: *Standard Fire Ins. Co. v. Reese*, Tex., 584 S.W.2d 835 for discussion of Rules 434 and 503 TRCP and harmless error.

The record here is a far cry from the misconduct in *Texas Employers' Ins. Assn. v. McCaslin*, 159 Tex. 273, 317 S.W.2d 916, cited by plaintiff, wherein plaintiff approached a juror and said: "Be sure and do all you can to help me".

■ From the record as a whole here, we think the asserted acts of misconduct harmless.

■ Contention 2 asserts the trial court erred in permitting defendant to introduce evidence of taxation, thereby informing members of the jury that any award to plaintiff would be paid by taxation, and that there was no insurance in existence to pay such an award, and was harmful and prejudicial to plaintiff.

Prior to trial the trial court granted plaintiff's motion in limine which instructed counsel for defendant not to ask any question which would "inform the jury in any manner whatsoever the cost and expense of trials such as this, including awarding the plaintiff any money, are paid out of the local tax dollars * * * ".

During trial former County Commissioner Hadley was asked by counsel for the defendant where he got the money to take care of the roads in his precinct, to which the witness answered "Through taxation". Counsel for plaintiff objected that such was in violation of the motion in limine. The trial court overruled the objection.

Both sides questioned the witness at length as to the amount of the budget for the precinct; where the money was spent; and why banisters and guard rails were not put up at high water crossings in the precinct.

There was no error in trial court's ruling, and in any event the matter is harmless.

■ Contention 3 asserts that the jury's answers to Issues 1, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27,

28, 29A and B, 30, 32, 33, and 35 are supported by no evidence or are so against the great weight of the evidence as to be manifestly unjust.

On June 10, 1975 at about 5 A.M. plaintiff and her husband left their home in their pickup to drive to work on County Road 705. They had lived there some five years and drove along County Road 705 at least twice a day. They knew the road was flooded at that particular location from time to time after heavy rains. It had been raining hard the night before and was still raining hard. Plaintiff testified she and her husband noticed the water crossing the road when they reached the Edwards' mailbox and her husband slowed down and remarked "well we have went across before". They proceeded into the water which washed the vehicle from the road. Plaintiff was safely extricated but her husband was drowned. Billy Joe McVicker, son of Mr. McVicker testified that plaintiff told him if she hadn't insisted on her husband proceeding into the water as the water crossed the road the accident would not have occurred.

It is apparent from the record that plaintiff and her husband were both well acquainted with the road and the fact that water passed over the road during periods of heavy rain, and that the road was being flooded at the time, but used imperfect judgment in their determination to proceed into a dangerous situation.

In answer to Issue 35 the jury found that plaintiff's negligence was 50% the cause of the occurrence, and that her husband's negligence was 50% the cause.

We hold that there is ample evidence to sustain the jury's findings in answer to Issues 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 35.

Even if the answers to the damage issues were not supported by the evidence (or against the great weight thereof) there can be no reversible error arising from these findings because the jury failed to find negligence on the part of defendant, and found negligence on the part of plaintiff and her husband. *Espinosa v. Schom-* *berg,* CCA (Waco) NRE, 601 S.W.2d 161; *Southern Pine Lbr. Co. v. Andrade,* Com. Appls, opinion adopted, 132 Tex. 372, 124 S.W.2d 334.

We have examined all of plaintiff's points and contentions and conclude they are without merit or do not present reversible error.

AFFIRMED.