**Emmitt W. HARKER, Appellant,**

*v.*

**COASTAL ENGINEERING, INC., Appellee.**

**No. 13–82–213–CV.**

Court of Appeals of Texas, Corpus Christi.

March 8, 1984.

Rehearing Denied May 31, 1984.

Carl H. Judin, Jr., Judin & Barron, McAllen, for appellant.

David H. Hockema, Atlas & Hall, McAllen, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a take-nothing judgment. Appellant, Emmitt W. Harker, brought suit against appellee, Coastal Engineering, Inc., for damages growing out of a collision between a car owned and operated by appellant and a pickup truck owned by appellee and operated by one of its employees. In a trial on the merits, jury findings were returned that the employee/driver of appellee's vehicle (Felipe Rodriguez) did not commit any negligent act or omission which proximately caused the occurrence in question; while the negligence of appellant did proximately cause the occurrence in question. A take-nothing judgment was entered, and appellant's motion for new trial was subsequently overruled by the trial court.

Appellant, through his third, fourth and fifth points of error, attacks the sufficiency of the evidence to support the jury's finding to Special Issue No. 1a, b, and c (the finding that Rodriguez did not commit a negligent act or omission which proximately caused the occurrence in question). In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

Felipe Rodriguez testified that on December 12, 1977, he was working as a warehouser for Coastal Engineering. On that date, he, Fred Zapata and Pete Lopez (ductmen for Coastal Engineering) were returning from Harlingen to pick up some material at Coastal Engineering, located in San Benito, for a job in Harlingen. All three were in a company pickup, and Rodriguez was driving. As they were approaching the Helen Moore overpass on the expressway, Rodriguez proceeded to pass a car in front of him. After looking in his rearview mirror and putting on his blinker, he changed lanes. As he was "about even with the other car" he "heard some brakes." He heard and felt a light bump and looked in the mirror again but "could no longer see the car that had hit [him], so—it was going to swerve on the left-hand side of the roadway ... the car was swerving." At the time of the collision, Rodriguez was "all the way" in the left-hand lane of the expressway. When he had looked in his mirror prior to passing, he had not seen any cars behind him. He did not look in his mirror while passing and did not see appellant's car until the impact.

Fred Pedroza testified that he was a ductman for Coastal Engineering and was riding in the vehicle with Rodriguez and Pete Robles at the time of the accident. He testified that he did not see appellant's car until after the collision. Pedro Robles testified that he was also with Rodriguez and "Fred" at the time of the collision. He testified that he felt the truck move to the left side of the lane and "[a]s soon as we were in the left lane. I guess about two or three seconds, something like that ... [I] [h]eard brakes. Then, a bump in the back."

James Tipton testified that he was a witness to the account. On December 12, 1977, he was driving to Brownsville from McAllen. He testified:

"I was headed south and I met a highway patrol in the northbound lane. I looked down at my speedometer to see how fast I was running and I was about ten over the speed limit. And I was watching him to see if he was going to turn around, cross the meridian on me. About that time I looked in my mirror and he[re] come [sic] a light-colored car

and he was coming on, really moving. He passed me, pulled back in the righ-hand [sic] lane. He went approximately a hundred yards to that overpass bridge on Helen Moore Road, and then, he pulled to the left like he was going to pass but there was a car—a vehicle in each lane. And when he pulled to the left, he never did straighten up. He went right straight across into the merid-ian. And the dust was so bad that I couldn't see where he went to. I pulled up there and stopped. And he had went down in between the two bridges on the ground. So, I got on my radio and tried to call the police. I finally got a local man in Harlingen and told him to send the police and an ambulance out there. And I went on over to the bridge, and there was a San Benito policeman direct-ing traffic on the other side of the bridge. And I stopped and gave that man my name and address, and told him that I had witnessed the accident. And I proceeded on home."

Appellant testified that on the morning of the accident he had taken a valium tab-let and an aventyl tablet, as per a doctor's prescription. He also testified that taking the prescribed medication did not affect his ability to drive. Appellant also testified that on the morning of the accident he had purchased a half pint of vodka. Between 10:30 a.m. and the time of the accident, he had four drinks from the bottle; one prior to leaving his house and three while driv-ing. Appellant testified that, prior to the accident, he was driving at a speed of ap-proximately 65 miles per hour. He testi-fied that at the time of the accident he could have been going seventy miles per hour or greater. According to appellant, it was while he was attempting to pass the vehicle Rodriguez was driving that Rodri-guez pulled out and hit the side of appel-lant's vehicle, causing the accident.

The damage to appellee's truck was mi-nor, consisting of a small dent in the fend-er, a broken tail-light and a bent license plate. Damage to appellant's car and inju-ry to appellant were much more extensive.

■ While the jury was presented two versions of how the accident occurred, it was free to choose for itself which version to believe. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. They are privileged to resolve conflicts and con-tradictions in the evidence by believing all or part or none of the testimony of any witness in arriving at the finding it con-cludes is most reasonable under the evi-dence. *Neuhaus v. Kain,* 557 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Ryan v. Morgan Spear Asso-ciates, Inc.,* 546 S.W.2d 678 (Tex.Civ.App. —Corpus Christi 1977, writ ref'd n.r.e.); *United States Fire Insurance Company v. Biggs,* 614 S.W.2d 496 (Tex.Civ.App.— Amarillo 1981, no writ). The evidence is sufficient to support the jury's findings regarding Special Issue No. 1 in its entire-ty. Appellant's third, fourth and fifth points of error are overruled.

■ In his first two points of error, ap-pellant complains that the trial court erred in refusing to submit to the jury requested issues regarding the negligence of Rodri-guez as a proximate cause of the collision. Appellant's first requested special issue reads in pertinent part:

"Do you find from a preponderance of the evidence that Felipe Rodriguez com-mitted any negligent act or omission which proximately caused the collision in question?

    *     *     *     *     *     *

In failing to make such application of the brakes as a person using ordinary care would have made...."

Appellant's second requested issue reads in pertinent part:

"Do you find from a preponderance of the evidence that Felipe Rodriguez com-mitted any negligent act or omission which proximately caused the collision in question?

    *     *     *     *     *     *

In failing to turn to the right before the collision in question...."

Appellant contends that "Rodriguez was negligent, which negligence proximately caused the occurrence in question in failing to brake his vehicle and in failing to turn his vehicle back to the right to avoid the collision. Had he done either one of those two things, that is, slowed his pickup or turned his pickup back to the right, there would not have been a collision between the two vehicles."

As part of the court's charge, the following special issue was submitted to the jury regarding Rodriguez' negligence:

"SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Felipe Rodriguez committed any negligent act or omission which proximately caused the occurrence in question?

In answering the above question you shall consider only whether or not Felipe Rodriguez was negligent in any one or more of the following particulars and none other.

A. In failing to keep such a lookout as a person using ordinary care would have kept, if you so find;

B. In starting to drive from the outside traffic lane to the inside traffic lane when it would not have appeared to a person using ordinary care that such movement could be made with safety, if you so find.

You are instructed that when any roadway has been divided into two (2) clearly marked lanes for traffic, the driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not drive from such lane until the driver shall first ascertain that such movement can be made with safety.

C. In turning from a direct course on U.S. Expressway 83 to the left without giving a signal for not less than the last 100 feet traveled by his vehicle, if you so find.

You are instructed that no person shall turn a vehicle from a direct course or move right or left upon a roadway without giving an appropriate signal continuously for not less than the last 100 feet traveled by the vehicle before turning."

The jury responded, "He did not."

First, the issues requested by appellant were merely various phases or shades of the controlling issue (whether Rodriguez was negligent) which was submitted to the jury. *See Franco v. Burtex Constructors, Inc.,* 586 S.W.2d 590 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Perales v. Braslau's Furniture Company,* 493 S.W.2d 638 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). Second, appellant's requested issues amounted to an attempt to inquire into a "last clear chance issue," and, as such, the trial court's refusal to submit the issues was not error. *Texaco, Inc. v. Haley,* 610 S.W.2d 224 (Tex.Civ.App. —Houston [14th Dist.] 1980, no writ); *see French v. Grigsby,* 571 S.W.2d 867 (Tex. 1978); *Ervin v. Gulf States, Inc.,* 594 S.W.2d 134 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Appellant's first two points of error are overruled.

In his sixth point of error, appellant contends that the trial court erred in not allowing him to impeach a witness based on a prior criminal conviction. James Tipton was called as a witness by the appellee/trial defendant. He testified that he had witnessed the accident and gave his account of it. Outside of the presence of the jury, and on voir dire examination, it was established that on April 19, 1971, Tipton was convicted of transporting aliens within the United States in violation of Title 8, United States Code, Section 1324(a)(2). Tipton was placed on five years' probation. The record further reflects that Tipton was discharged from probation on October 14, 1974. Tipton testified as a witness on March 2, 1982.

■ While we are not inclined to believe that the offense committed by Tipton necessarily is one involving moral turpitude, we do not have to reach that issue today. Even were we to hold that the crime involved was one of moral turpitude, we

would still be faced with the question of remoteness. With regard to remoteness, the use of a prior conviction for impeachment purposes in a civil case falls into three categories: 1) where the conviction is so remote as to render it inadmissible as a matter of law; 2) where the conviction is so near in time as to be admissible as a matter of law; and 3) where the remoteness or immediacy of the conviction lies somewhere in between the two extremes so that the matter is left to the trial court's discretion. *Landry v. Travelers Insurance Company,* 458 S.W.2d 649 (Tex.1970). Tipton's conviction lies in this third category.

■ Appellant contends that the crucial time to be considered in determining remoteness is that time between Tipton's release from probation and the date of the accident. Such proposition has no foundation in Texas civil law. In fact, such a contention was expressly overruled in *Millers Mutual Fire Insurance Company of Texas v. Pollard,* 474 S.W.2d 638 (Tex.Civ. App.—Houston [14th Dist.] 1971, no writ), with which we agree. We cannot say that the trial court abused its discretion in preventing appellant from impeaching the witness Tipton as to his prior conviction. Appellant's sixth point of error is overruled.

Appellant asserts as his seventh point of error the failure of the trial court to grant a mistrial after it was brought to the court's attention that the chairman of the board of the defendant corporation had engaged in an unauthorized communication between himself and a member of the jury panel. Following a recess taken by the court, it was brought to the court's attention that during the recess, a conversation occurred between J.D. Murphy, chairman of the board of the defendant corporation, and Juror Rosales. Testimony was heard regarding this conversation, establishing that Officer Escamilla, the security officer for the court, and Murphy were discussing college hour credits when Escamilla was called away. Escamilla testified that Murphy and Rosales were not conversing when he left, nor were they conversing when he returned. While he had not timed his ab-

sence, he described it as not over one minute. A Mr. Seljos testified that the conversation between Murphy and Rosales had lasted long enough for him to witness it, get the trial judge and for the trial judge to separate the two. Murphy testified that he had been conversing with Escamilla about taking college credits by examination when Escamilla was called away. At that time a juror who was standing across the hall joined him in a conversation about college credits. The two remained across the hall from each other as they conversed. Murphy stated that the conversation could not have lasted more than a minute or a minute and a half. He further stated that during the conversation they did not discuss anything personal or anything about the case; the conversation was confined to a discussion of college credits. After the trial judge broke up the conversation, Escamilla returned and Murphy and Escamilla continued their conversation at the coffee bar.

At appellant's attorney's request, in order not to prejudice Rosales and the case, Rosales was not called to offer testimony on the conversation. Appellant did not later offer any testimony from Rosales and did not attach any affidavits to his motion for new trial. The trial court denied appellant's motion for a mistrial and then, upon reconvening the jury, instructed them that:

"THE COURT: All right. Let me say this to you, ladies and gentlemen. It has come to the attention of the Court that one of the jurors talked to one of the parties in the lawsuit. The Court has gone into this matter outside of your presence. The Court does not feel that there has been anything that requires the Court to order a mistrial in this case. But let me say this to you. I'm not sure that our instructions are good enough for you. And I have told you everytime you have gotten up to leave this courtroom that you shouldn't talk to anyone about the case or discuss it among yourselves or anything of that nature. But let me go further. And this case is not going to be tried in a day; it might go on longer, of course. So, to avoid any indi-

cation of any impropriety in anyway, let me say to you: As far as anyone who is involved in this lawsuit, anybody that sits over here as an attorney or party to the lawsuit, just don't talk to them.

MR. HOCKEMA: The witnesses, Your Honor.

THE COURT: The witnesses also. Those people that you know are witnesses. I don't want to embarass [sic] anybody about this thing. But somebody might think that you are talking about the case. So, let's try to avoid even any indication of seeing somebody talk to somebody that might feel that there is a discussion about the case. So, it's important because we spend a lot of time in these cases. WE [sic] don't want to have a mistrial on the basis of something like that. Lord only knows, we have enough problems without this sort of thing. So, don't talk to anybody who is a witness or a party or an attorney in the case. If you can avoid it at all.

It's all right to say 'hello' or something like that, or 'let me pass' or whatever. A casual expression between human beings. But don't be put in a position of talking to somebody that might indicate to somebody who is standing over to the side that there might be talking about the casee [sic]. I'm not chastizing any member of the jury; I'm not saying that you are doing anything wrong. I don't want any of you to get that feeling. But don't do it because people might think you are talking about the case. So, let's go forward."

■ A communication made to a juror may result in misconduct and necessitate a new trial if that communication is deemed material and if it reasonably appears from the evidence as a whole that injury probably resulted to the complaining party. Rule 327. Tex.R.Civ.P. In some instances an overt act of misconduct may be prejudicial itself so as to establish injury. *Texas Employer's Insurance Association v. McCaslin*, 159 Tex. 273, 317 S.W.2d 916 (1958). However, such is not the case under the facts before us today. The testimo-

ny presented on the misconduct reflects that the conversation between Rosales and Murphy was initiated by Rosales; the conversation was very brief and nothing connected with the case was discussed. An admonishment and instruction was given the jury regarding future conversing with parties or witnesses to the lawsuit; and no affidavits are attached to the motion for new trial which would support a showing of misconduct. Appellant had the burden to establish misconduct resulting in probable injury. We find that he did not meet this burden. *See Smith v. Selz*, 395 S.W.2d 692 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n.r.e.); *White v. Yellow Cab Company*, 286 S.W.2d 237 (Tex.Civ. App.—Beaumont 1955, no writ). Appellant's seventh point of error is overruled.

■ In his eighth and ninth points of error, appellant contends that the jury did not follow their oaths and the charge, but were motivated by passion, prejudice and other improper motives. Appellant first contends that the brevity (approximately 47 minutes) in which the jury returned its verdict demonstrates this disregard of their oaths and the charge. "Promptness alone, in the absence of other circumstances evincing passion or prejudice, cannot be made the basis of reversible error." *Fisher v. Leach*, 221 S.W.2d 384 (Tex.Civ.App. —San Antonio 1949, writ ref'd n.r.e.). Appellant also contends that passion and prejudice is shown by the failure of the jury to return a favorable answer to the special issue concerning Rodriguez' negligence and a monetary damage award to reasonably compensate appellant for his injuries caused by the accident. As we have already pointed out, the evidence is sufficient to support the jury's finding that Rodriguez was not negligent. Additionally, the failure to find that appellant sustained damages is not sufficient by itself to establish prejudice, bias or improper influence. *American Produce & Vegetable Company v. Phoenix Assurance Company of New York*, 408 S.W.2d 954 (Tex.Civ.App.—Dallas 1966, no writ). Even if the jury's answer to the damage issue is erroneous,

error is not reversible because the jury failed to find negligence on the part of Rodriguez and found negligence on the part of appellant. *McVicker v. Johnson County*, 616 S.W.2d 430 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.). Moreover the court would not be justified in assuming the prejudice or improper influence was responsible for the jury's answers to other issues relating to negligence where there was substantial evidence in the record supporting those answers and no evidence that prejudice or improper influence entered into or caused them. *South Texas Natural Gas Gathering Co. v. Guerra*, 469 S.W.2d 899 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). Appellant's eighth and ninth points of error are overruled.

 In his tenth point of error, appellant attacks the jury's finding to Special Issue No. 4 (concerning a monetary amount which would compensate appellant for his injuries sustained as a result of the accident) as not supported by the evidence. As we have already pointed out, in light of the jury's findings regarding negligence, any error occasioned in the jury's response to Special Issue No. 4 is not reversible. Appellant's tenth point of error is overruled.

In his eleventh, and final point of error, appellant contends that the cumulative effect of points of error numbers one to ten constitute reversible error. After reviewing appellant's contentions in light of the entire record and our holdings herein, we have concluded that, if errors were committed by the trial court, they were not either individually or cumulatively calculated to cause nor did they cause the rendition of an improper judgment in this case. Appellant's eleventh point of error is overruled.

Appellee assigns as cross-point of error that the trial court erred in refusing to submit their requested special issue concerning appellant's operation of his vehicle while intoxicated. At trial, appellee requested the addition to the special issue inquiring about the negligent acts or omissions of appellant of an additional instruction concerning appellant's operation of his motor vehicle while intoxicated. Appel-

lant's intoxication is not an ultimate, controlling issue, the controlling issue being appellant's driving ability, vigilance or control. Therefore, no error resulted in the trial court's refusal to submit appellee's requested issue, since appellant's negligence while driving was adequately presented to the jury through Special Issue No. 2. *See Scott v. Gardner*, 137 Tex. 628, 156 S.W.2d 513 (1941); *Texaco, Inc. v. Haley*, 610 S.W.2d at 227. Appellee's cross-point of error is overruled. The judgment of the trial court is affirmed.