In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-534 CV


____________________



IN RE: THE COMMITMENT OF BOYD MULLENS







On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 00-11-07111-CV






OPINION


 Pursuant to Title 11, Chapter 841 of the Health and Safety Code ("the SVP
statute"), the State of Texas filed a petition to civilly commit Boyd Mullens as a sexually
violent predator. See Tex. Health & Safety Code Ann. §§ 841.001-841.147 (Vernon
Supp. 2003). A jury found that Mullens suffers from a behavioral abnormality that makes
him likely to engage in a predatory act of sexual violence. The trial court entered a final
judgment and order of civil commitment, from which Mullens appeals. Mullens presents
five issues.


Analysis


Is The Statute Punitive?


 In his first issue Mullens argues that the Texas sexually violent predator statute is
punitive in nature and violates basic constitutional safeguards. The United States Supreme
Court has found similar SVP commitment statutes to be civil in nature. See Seling v.
Young, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001); Kansas v. Hendricks, 521
U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Relying on this precedent, we
recently considered and rejected the argument that the Texas SVP statute is punitive, not
civil. See Beasley v. Molett, No. 09-01-078 CV, 2002 WL _____ (Tex. App.--Beaumont
December 19, 2002, no pet. h.). 

 Mullens attempts to distinguish between the Kansas SVP statute found constitutional
in Hendricks and the Texas SVP statute. The Kansas statute requires, as a minimum
prerequisite for the SVP finding, a prior charge for a sexually violent offense; it does not
require a prior conviction for a sexually violent offense for SVP purposes. See Hendricks,
521 U.S. at 351-52. Mullens argues that the prior convictions under Chapter 841 are not
presented solely for evidentiary purposes and are a prerequisite to civil commitment, and
that the Act is therefore punitive. 

 In Allen v. Illinois, 478 U.S. 364, 370-72, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986),
the Supreme Court found an Illinois statute to be non-punitive, though the statute required
proof of at least one act or attempted act of sexual assault. 478 U.S. at 371. The Court
held that the "antecedent conduct is received not to punish past misdeeds, but primarily to
show the accused's mental condition and to predict future behavior." Id. The Texas
statute is different in that it requires a prior sexually violent offense. But the offense
showing under the Texas statute and the proof submitted at trial under the Illinois statute,
and the Kansas statute, serve the same purpose; they are received primarily to show the
accused's mental condition and to aid in the prediction of future behavior. 

 Mullens also claims section 841.085 is punitive in nature and operates as a
deterrent, because it makes the violation of the commitment requirements imposed by the
trial judge a third degree felony, and it has nothing to do with treatment. See Tex.
Health & Safety Code Ann. § 841.085 (Vernon Supp. 2003). He further argues that
the enhancement scheme in the Texas Penal Code, as applied to the third degree felony in
section 841.085, would authorize his incarceration for twenty-five to ninety-nine years or
life. See Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp. 2003). We addressed the issue
of the punitive or civil nature of the Act in Beasley; we need not address it further. As to
the claim of the deterrent purpose of section 841.085, a deterrent effect may have both
civil and criminal goals; the existence of dual deterrent goals does not render the entire Act
punitive. See generally Hudson v. United States, 522 U.S. 93, 105, 118 S.Ct. 488, 139
L.Ed.2d 450 (1997); United States v. Ursery, 518 U.S. 267, 292, 116 S.Ct. 2135, 135
L.Ed.2d 549 (1996). And when the entire Act is considered, deterrence, whether civil or
criminal in nature, is not the primary purpose or effect of the Act. In section 841.001, the
legislature found "that a small but extremely dangerous group of sexually violent predators
exists and those predators have a behavioral abnormality that is not amenable to traditional
mental illness treatment modalities and that makes the predators likely to engage in
repeated predatory acts of sexual violence." Tex. Health & Safety Code Ann. §
841.001 (Vernon Supp. 2003). Based on that initial finding, the legislature further found
that a "civil commitment procedure for the long-term supervision and treatment of sexually
violent predators is necessary and in the interest of the state." Id. Section 841.085 serves
the goals of protection of society from future dangerous behavior and of supervision of
persons being treated on an outpatient basis. The possible criminal penalty which may be
imposed for a violation of a judge's order does not render the entire Act punitive in nature.
 See generally Bennis v. Michigan, 516 U.S. 442, 451-52, 116 S.Ct. 994, 134 L.Ed.2d 68
(1996).

 Finally, Mullens argues that section 841.085 punishes the person for prior criminal
conduct. But section 841.085 deals only with violations of the requirements in the
commitment order, not any prior criminal conduct. Issue one is overruled.



 Serious Difficulty in Controlling Behavior


 In issue two, Mullens contends his right to due process has been violated because,
he says, the State failed to prove he has serious difficulty in controlling his behavior. In
Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 871, 151 L.Ed.2d 856 (2002), the
Supreme Court declared that due process requires "proof of serious difficulty in controlling
behavior" before a person can be civilly committed as a sexually violent predator. The
proof of "inability to control" must be sufficient to distinguish the dangerous sexual
offender whose serious mental illness, abnormality, or disorder subjects the person to civil
commitment from the dangerous but typical recidivist convicted in a criminal case. Crane,
534 U.S. at 413. 

 Chapter 841 requires the State to prove beyond a reasonable doubt that a person is
a sexually violent predator. See Tex. Health & Safety Code Ann. § 841.062 (Vernon
Supp. 2003). Because the statute places upon the State the burden of proof employed in
criminal law, we adopt the appellate standard of review in criminal cases for legal 
sufficiency of the evidence. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979). In a legal sufficiency review, this court reviews all of the
evidence in a light most favorable to the verdict. Id. We look to see if a rational
factfinder could have found, beyond a reasonable doubt, the elements required for
commitment under the SVP statute. 

 A Kansas statute was considered by the Supreme Court in Crane, as it was in
Kansas v. Hendricks, 521 U.S. at 346. Crane, 534 U. S. at 409. The Supreme Court
noted in Crane that the Hendricks case involved an individual suffering from pedophilia --
"a mental abnormality that critically involves what a lay person might describe as a lack
of control. DSM-IV 571-572 (listing as a diagnostic criterion for pedophilia that an
individual have acted on, or been affected by, 'sexual urges' toward children)." Crane,
534 U.S. at 414; see also Hendricks, 521 U.S. at 360. Hendricks had admitted he could
not control the urge to molest children. Id. As Crane stated, "'[I]nability to control
behavior' will not be demonstrable with mathematical precision. It is enough to say that
there must be proof of serious difficulty in controlling behavior." Crane, 534 U.S. at 413. 
In reviewing the sufficiency of the evidence concerning "inability to control behavior," we
consider such matters as the nature of the psychiatric disorder and the severity of the
abnormality itself. Crane, 534 U.S. at 413. As noted in Crane and Hendricks, the
psychiatric profession considers pedophilia a serious mental disorder. Crane, 534 U.S.
at 412, 414; Hendricks, 521 U.S. at 360. 

 Dr. Michael Gilhousen, a psychologist, testified for the State. He performed a
psychological evaluation on Mullens "pursuant to the civil commitment proceedings." 
Gilhousen based his evaluation on his interview with Mullens and various psychological
tests. (1) 

 Gilhousen expressed his opinion that Mullens suffers from a behavioral abnormality
that makes Mullens likely to engage in a predatory act of sexual violence. See Tex.
Health & Safety Code Ann. § 841.003(a)(2) (Vernon Supp. 2003). The SVP statute
defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting
a person's emotional or volitional capacity, predisposes the person to commit a sexually
violent offense, to the extent that the person becomes a menace to the health and safety of
another person." Tex. Health & Safety Code Ann. § 841.002(2) (Vernon Supp. 2003). 
Based on the tests, the interview, and other records before him, Gilhousen diagnosed
pedophilia and narcissistic personality disorder and concluded Mullens has a "behavioral
abnormality." On cross-examination of Gilhousen, Mullens called into question the results
of the tests and Gilhousen's diagnoses; Gilhousen remained firm in his diagnoses and
conclusions. 

 Mullens has five prior convictions for sexually-related offenses against three
children: indecency with a child, two convictions for sexual assault of a child, and two
convictions for aggravated sexual assault of a child. Dr. Gilhousen testified the records
he reviewed indicated Mullens supplied the children with "gifts, money, alcohol,
cigarettes, pool cues and things like that to gain acceptance with them and to establish a
seemingly innocent relationship to be with with an eye towards . . . perpetrating sexual
crimes at a later time." Mullens began with the "Boy's Club community service . . . and
then expanded from there." Gilhousen testified "it's a known pattern for pedophiles to do
that kind of behavior, to groom their victims. . . ." Gilhousen thought it was very clear
that Mullens had no sympathy for the victims -- "no evidence of any empathy whatsoever
towards those victims." Mullens placed some of the blame on the child victims and also
expressed unwillingness to participate in a sex offenders' program because Mullens thought
they "belittled" him. 

 Gilhousen recited the three criteria used to diagnose pedophilia and found each to
be present in Mullens: (a) Over a period of at least six months, the person has recurrent,
intense, sexually arousing fantasies, sexual urges, or behaviors involving sexual activity
with a prepubescent child or children generally age 13 years or younger; (b) a person has
acted on these sexual urges, or the sex urges or fantasies caused marked distress or
interpersonal difficulties; (c) the perpetrator is at least age 16 years and at least five years
older than the child. In Dr. Gilhousen's opinion, a pedophile will always have desires for
sexual relationships with children. Based on the interview with Mullens and the
psychological tests administered to him, Gilhousen concluded Mullens is likely to commit
acts of a sexual nature with other children once he is released from prison. 

 Dr. Rahn Bailey, a psychiatrist, testified for the State. Although he did not
interview Mullens, he did review records pertaining to Mullens. He too concluded
Mullens has a "behavioral abnormality." Mullens argues that Dr. Bailey's characterization
of pedophilia as "opportunistic" means that the person has an ability to control his
behavior. But the fact that a person waits for an opportunity to act does not mean the
person has no serious difficulty in controlling behavior. Bailey testified that in his opinion
with each successive offense the risk of reoffense grows. 

 Douglas Bertling, a psychologist in charge of evaluation of sex offenders before
their release from prison, testified for the State. Like Dr. Gilhousen, Bertling would place
Mullens in a high risk category to repeat as a sex offender. As with Dr. Gilhousen,
Mullens challenged the validity of the tests and their application to him.

 Ronald Patterson, a licensed master social worker, advanced clinical practitioner,
and registered sex offender treatment provider with the Council of Sex Offender Treatment
in Texas, testified for the defense. Mullens had been a resident of a half-way house and
met there with Patterson weekly for approximately a year and a half, mainly in group
therapy sessions. Patterson described Mullens as a "regressed offender," not a pedophile. 
In Patterson's view, the two conditions are different. Patterson testified that, unlike a
pedophile who is a fixated sex offender, the regressed offender has functioned well until
a certain age and then made decisions that led to the commission of crimes against
children. Patterson acknowledged that the "regressed offender" is not a diagnosis in the
DSM-IV, a tool used in psychological and psychiatric communities for making diagnoses. 
In Patterson's professional opinion, "Mullens is at low risk to re-engage in a behavior that
he went to the penitentiary for." 

 The jury is the sole judge of the credibility of the witnesses and the weight to be
given their testimony. See Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994);
see also Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex. 1982). The jury may
resolve conflicts and contradictions in the evidence by believing all, part, or none of the
witnesses' testimony. See Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986);
see also Harker v. Coastal Engineering, Inc., 672 S.W.2d 517, 520 (Tex. App.--Corpus
Christi 1984, writ ref'd n.r.e.). Further, a jury may draw reasonable inferences from
basic facts to ultimate facts. See Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000). On the evidence in this record, a rational trier of fact could find beyond a
reasonable doubt that Mullens had serious difficulty in controlling his predatory behavior
because of a defined abnormality. Issue two is overruled. 



Behavioral Abnormality


 In issue three Mullens contends there was legally insufficient evidence to establish
beyond a reasonable doubt that he suffers from a behavioral abnormality that makes him
likely to engage in a predatory act of sexual violence. The State presented two expert
witnesses (one a psychologist, the other a psychiatrist), who testified, based on Mullens'
records and the statutory definition, that he suffered from a behavioral abnormality that
makes him likely to engage in a predatory act of sexual violence. A third witness, a
psychologist, testified Mullens was in the high risk category to reoffend. 

 Through cross-examination, Mullens sought to discredit the psychological tests
administered to Mullens and the conclusions reached by the State's experts. The jury was
free to judge the credibility of the witnesses and the weight to be given their testimony and
to resolve conflicts and contradictions in the evidence by believing all, part, or none of a
witness's testimony. The evidence, as detailed in issue two, was sufficient to establish
beyond a reasonable doubt that Mullens has a behavioral abnormality that makes him likely
to engage a predatory act of sexual violence. Issue three is overruled.







Constitutionality of Final Judgment& 


and Order of Commitment



 In issue four, Mullens argues that the statute and, as a result, the final judgment

and order of commitment, are unconstitutionally vague. He also appears to argue that the
statute violates the separation of powers doctrine by improperly delegating authority to the
trial judge. The four sections he claims are vague are the following: 

 (A) Section 841.082(a)(1), which allows the trial judge to determine where the SVP
lives after he is released from prison; 

 

 (B) Section 841.082(a)(4), which requires the SVP's participation in a "specific
course of treatment" without defining what the course is or who the treatment
provider and case manager are;


 (C) Section 841.082(a)(5), which requires the SVP to submit to a tracking service
and other appropriate supervision without telling him which places he cannot go or
what the "other" supervision is; 

 

 (D) Section 841.082(a)(9), which requires the SVP to submit to any other
requirements determined necessary by the trial judge without detailing those
requirements. 


See Tex. Health & Safety Code Ann. § 841.082(a)(1),(4), (5), (9) (Vernon Supp.
2003). 

 Mullens claims these requirements are unconstitutional because persons of "common
intelligence" would have to guess at their meaning and application and because some of
the requirements improperly delegate basic matters to the trial judge, case manager, and
treatment staff. We have previously addressed and rejected a vagueness argument, in
relation to section 841.082(a)(9), along with a separation of powers attack on the SVP
statute, in Beasley, 2002 WL_______, at *_____. Though Mullens attacks additional
subsections of 841.082 in his constitutional argument, our analysis of the vagueness and
separation of powers claims is the same. Section 841.082(a) requires the trial judge to
impose on the SVP the requirements necessary to ensure the person's compliance with
treatment and supervision and to protect the community. Once those terms or
requirements are set out in the order, the person has specific notice of what is required. 
We are not persuaded the statute is unconstitutionally vague because it requires the trial
judge to set out the commitment requirements in the order, or because it allows the trial
judge to delegate authority to, among others, the Interagency Council on Sex Offender
Treatment (to provide the necessary and appropriate treatment) and to a tracking service
or other supervisory entity for the purpose of tracking the person. See Tex. Health &
Safety Code Ann. §§ 841.007, 841.082 (Vernon Supp. 2003). The order itself is not
vague in its requirements. Issue four is overruled.

Privilege Against Self-Incrimination


 In issue five, Mullens argues his Fifth Amendment privilege against self-incrimination was violated when the court ordered him to submit to polygraph
examinations as a condition of civil commitment. He says if he refuses to take a polygraph
exam, he is subject to criminal punishment for violating the civil commitment order; and
if he takes the exam, he may be compelled, in violation of his Fifth Amendment rights, to
reveal information that, although not criminal, may result in criminal prosecution because
the compelled information may show technical violations of the commitment order. We
rejected this argument in Beasley. Beasley, 2002 WL ______, at *__. Chapter 841 and
the order do not by their terms attach a penalty for invoking the Fifth Amendment
privilege. The Fifth Amendment privilege is not self-executing; it is a privilege that must
be asserted. See In re Verbois, 10 S.W.3d 825, 828 (Tex. App.-- Waco 2000, orig.
proceeding [mand. denied]) (The privilege must be asserted on a question-by-question
basis.). 

 Appellant's issues are overruled. The judgment and order of the trial court are
affirmed.

 AFFIRMED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on November 15, 2002

Opinion Delivered December 19, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.

DISSENTING OPINION


 I concur in all respects with the exception of that portion which upholds the validity
of Tex. Health & Safety Code Ann. § 841.082(a)(9) (Vernon Supp. 2003). As stated
in my dissent in Beasley v. Molett, No. 09-01-078 CV, 2002 WL _______ (Tex. App.--Beaumont December 19, 2002, no pet. h.), I believe this section is an unconstitutional
delegation or power by the legislature and, when read in conjunction with section 841.085
of the code, creates a criminal statute that violates the void for vagueness doctrine.




 DON BURGESS

 Justice


Dissent Delivered

December 19, 2002

Publish
1. Mullens took various tests to assess the nature of his problem: the Hare
Psychopathy Checklist to aid in determining recidivism in sex offenders; the MnSOST-R,
an "actuarial instrument" to predict reoffending in sex offenders; and the Static-99 test.