**John R. ZAK, et ux, Appellants,**

v.

**Jeroldé Clark PARKS, et ux, Appellees.**

**No. C14–85–792–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 12, 1987.

Rehearing Denied April 9, 1987.

Gary D. Aguren, Houston, for appellants.

Douglas M. Selwyn, James H. Shoemake, Harry Herzog, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

ELLIS, Justice.

This is a Deceptive Trade Practice suit involving the sale of a house. John and Yvelle Zak, purchasers of a residence in Spring, Texas, sued Jerolde and Theresa Parks under the Texas Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com.Code Ann. §§ 17.41–17.62 (Vernon 1968). The Zaks alleged that the Parks breached express warranties, made false or misleading statements of fact regarding the need for repairs, represented that work or services had been done when they had not, and misrepresented the standard, quality or grade of the used home. In particular, the Zaks complained that by plastering and repainting the Parks had disguised sheetrock fractures and foundation cracks, that the Parks had removed certain equipment they had agreed to leave, and the Parks had not disclosed that the back yard was subject to flooding. The Parks counterclaimed for attorneys' fees, alleging that the Zaks' suit was groundless and brought in bad faith and for the purposes of harassment.

A jury answered special issues on all aspects of liability in favor of the defendants, Mr. & Mrs. Parks, and further found that the plaintiffs, Mr. & Mrs. Zak, brought the suit in bad faith or for the purposes of harassment. After accepting the verdict of the jury, the trial court announced that the court found the lawsuit to be groundless. A take nothing judgment was entered against the Zaks. The trial court further ordered that the Zaks pay the Parks' attorneys' fees in the amount of $42,500 pursuant to § 17.50(c) of the Texas Business & Commerce Code (the Deceptive Trade Practices Act). Mr. & Mrs. Zak appeal the judgment of the trial court. We affirm.

At the time the alleged deceptive practices occurred, § 17.50(c) made the following provision for defendants' attorneys' fees:

(c) On a finding by the court that an action under this section was groundless and brought in bad faith or for the purposes of harassment, the court may award the defendant reasonable attorneys' fees in relation to the amount of work expended, and court costs.

■ Appellants assert in their first point of error that the case should be reversed and rendered because the trial court failed to make a finding that the law suit was groundless before the case was submitted to the jury. Section 17.50(c) makes no such requirement and no case law supports appellants' contention. Appellants' first point of error is overruled.

In their second point of error appellants contend that as a matter of law the lawsuit

was not groundless. Appellants argue that a ruling by the court that there is sufficient evidence to go to the jury is inconsistent with a later finding by the court that the suit is groundless.

■ The appellate courts of this state have not adopted the simplistic interpretation of a groundless suit urged by the appellants. The determination that a suit is legally groundless is made by the trial judge on a case by case basis. The status is not the automatic result of other actions by the judge or jury. The court may deny defendants' motion for an instructed verdict, allow plaintiffs' and defendants' special issues to be presented to the jury and subsequently find the suit legally groundless. *See Pope v. Darcey*, 667 S.W.2d 270 (Tex.App.—Hou. [14th] 1984, writ ref'd n.r. e.); *LaChance v. McKown*, 649 S.W.2d 658 (Tex.App.—Texarkana 1983, writ ref'd n.r. e.); *Parks v. McDougall*, 659 S.W.2d 875 (Tex.App.—San Antonio 1983, no writ); *Vela v. Ebert's Mobile Homes, Inc.*, 630 S.W.2d 434 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). On the other hand, a suit does not become legally groundless merely because the plaintiffs fail to convince the jury of the truth of their allegations. *LaChance*, 649 S.W.2d at 661.

■ In making its finding that the suit is groundless, the trial court will consider undisputed fact issues, law issues or jury findings. *O'Shea v. International Business Machines Corp.*, 578 S.W.2d 844, 848 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Undisputed facts support the finding that the lawsuit brought by the Zaks is groundless. Mr. Zak, an engineer and a real estate agent, knew that all houses settle as the soil moves and the effects of this settling are not defects. Mr. Zak received a real estate commission from the Parks on the sale of the home. Mr. Zak was allowed to investigate every part of the house when he inspected the home four times before contracting to buy it. Mr. Zak was aware the sheetrock in the home had been repaired. Most importantly, the undisputed terms of the earnest money contract, as well as the circumstances surrounding its execution, conclusively support a finding that the suit is groundless. Before contracting to buy, the Zaks had a structural expert examine the house thoroughly. He discovered a fracture in the foundation of the master bedroom. After the inspection, an earnest money contract was drafted by Mr. Zak and signed by both Mr. & Mrs. Zak and Mr. & Mrs. Parks. It provided that the Parks would escrow funds in the amount of $2,300 "to correct structural defect of slab fracture." Any funds remaining in the escrow account after payment for repairs were to be returned to the Parks. The Zaks acknowledged that the Parks did place $2,300 in escrow. As originally drafted, the contract also provided, "If the escrow funds are not sufficient to cover all expenses associated with the required repairs, seller shall be liable for all repair related costs in excess of the escrowed funds." It is undisputed that this sentence was deleted from the contract and that all parties to the contract initialled the deletion. From the terms of the earnest money contract, it is clearly evident that the Zaks expressly agreed to a limit of $2,300 on the liability of the Parks for all expenses involved in repairing the slab. A lawsuit brought to recover an additional amount for repair of the slab defect is groundless as a matter of law. Appellants' second point of error is overruled.

■ In their third point of error appellants contend that there was no evidence, and in their fourth point insufficient evidence, to support the trial court's finding that the plaintiffs' lawsuit was groundless. The determination of whether a suit is groundless is a question of law. *Schott v. Leissner*, 659 S.W.2d 752, 753 (Tex.App.—Corpus Christi 1983, *writ ref'd n.r.e. per curiam*, 668 S.W.2d 686 (Tex.1984); *LaChance v. McKown*, 649 S.W.2d 658, 661 (Tex.App.—Texarkana 1983, writ ref'd n.r. e.). An appellate court will review legal findings when attacked as erroneous as a matter of law but not when attacked on

grounds of sufficiency of the evidence to support them, as if they were findings of fact. *Little v. Linder*, 651 S.W.2d 895, 898 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *First National Bank In Dallas v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Point of error three is overruled for the same reason we have overruled point of error two. Point of error four is overruled because it does not present a matter that is reviewable by this court.

In points of error five, six and seven appellants attack the legal and factual sufficiency of the evidence to support the jury finding that the Zaks brought the lawsuit in bad faith or for the purpose of harassment. We find that there was ample evidence to support the finding. Appellants cite a law review article by Goodfriend and Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act*, 33 Sw.L.J. 941, 988 (1979), as support for their contention that in order to prove bad faith or harassment a defendant must prove malice, personal ill will or spite, or reckless disregard for the defendants' rights. We do not agree that every defendant must prove the existence of one or more of these states of mind as a minimum standard to support a finding of bad faith or harassment, but we do find evidence of malice, ill will and spite in the record of this case. Appellants' principal argument is that the sellers represented that the house had no defects, and yet numerous problems, requiring extensive repair, developed after the sale. As proof of these defects and of the validity of the lawsuit appellants offered sixty-five photographs of the home into evidence. The photographs show cracks in the concrete slab of the den; cracked mortar between the bricks of the exterior side of the master bathroom; splintered wood around the lock on the rear door of the house and two puddles of standing water, one on the back patio and another in a rear corner of the lot.

As evidence of the absence of bad faith or harassment, appellants refer the court to their offer to settle the matter before suit. Six weeks after closing, the Zaks sent the Parks a demand letter outlining ten "specific complaints and the actual damages suffered by [the Zaks] because of the said defects." The first item requested more than $17,300 for foundation repair for "damage far beyond that known to Mr. or Mrs. Zak prior to closing." In addition to $15,000 to level the house with fifty piers, the Zaks included in the cost of foundation repair a demand that the Parks pay for treatment to prevent the entrance of termites, pay for recaulking windows, and pay for replacement of shrubs moved to accomplish the repair. Other complaints and expenses included replacement of the damaged rear door, installation of gutters on the house, replacement of items alleged to have been wrongfully removed from the house by the Parks, plumbing repair of a drain that became clogged after inspection, attorneys' fees, and reimbursement for lost wages, mileage and parking. The letter demanded more than $20,000 compensation for alleged damages and expenses. In the alternative the Zaks' demand letter proposed that the contract for sale of the house be rescinded, the $93,000 purchase price be refunded, and the Parks further reimburse the Zaks approximately $7,000 for out-of-pocket expenses related to the purchase of the house and the pursuit of their claim. No allowance or offset was made for the realtor's commission Mr. Zak received for selling the home. Neither the terms nor the tone of this demand letter suggest a good faith effort to negotiate.

The evidence adduced at trial showed each complaint in the letter and subsequent lawsuit to be without merit. With respect to the foundation repair, two elements of the evidence support the finding that the suit was brought in bad faith or for the purpose of harassment: (1) the written agreement in the earnest money contract to limit the liability of the Parks for foundation repair to $2,300, and (2) the testimony of an expert in foundation repair who said the foundation could have been

repaired for less than $2,000. At trial experts on foundation repair testified for both parties as to the structural condition of the home and the cost of foundation repair. Appellants' expert testified that he inspected the house three times. On his first inspection, September 20, 1979, he noted that the house was settling unevenly and recommended installation of piers to stabilize it at a cost of $19,960. On subsequent visits, two years and five years later, he noted the house had continued to shift and recommended a greater number of piers at an increased cost. Mr. Bert Barron, who was hired by the Zaks to inspect the home prior to the closing, was called by the Parks. He testified (i) that the foundation damage could have been repaired for $2,000 or less, (ii) that his report to Mr. Zak noted the fractures in brick and mortar on the exterior wall, (iii) that a careful watering program would lessen the probability of further movement of the house, and (iv) that there was no evidence that the sellers were attempting to hide foundation problems. Mr. Zak admitted that he had not used the escrowed funds to repair the foundation nor had he refunded the unused funds to the Parks. The written agreement limiting the Parks' liability for foundation repair, coupled with Mr. Barron's testimony, is sufficient factual evidence for the jury to decide that the lawsuit demanding that the Parks assume additional liability for foundation repair was brought in bad faith or to harass the Parks.

With respect to the alleged flooding, the absence of guttering on the house was as apparent to buyer as to seller. Meteorological reports admitted into evidence show that on September 19, 1979, a few days after the Zaks moved into the home, nearly seven inches of rain fell in the area. Evidence of standing water in the back yard after such a deluge is not conclusive proof of a defect. To demand that the Parks pay to have a drainage system installed in order to prevent puddles after a seven inch rain is unreasonable. Such a demand could well have been interpreted by a jury as harassment or bad faith.

With respect to the damaged rear door of the residence, the undisputed evidence showed that the door had been damaged by thieves or vandals attempting to enter the house the night before the Zaks moved in. Appellants have not directed the court's attention to any theory of law that would hold the sellers liable for acts of vandalism occurring after the house was sold. With respect to several items that the Zaks claimed the Parks wrongfully removed from the house, Mrs. Parks testified that with the exception of two panels of draperies which matched her daughter's bedspread none of the other items—a Pool Sweep (a particular brand of swimming pool vacuum), a garage door opener, other draperies and rods—ever existed. Mrs. Parks said she intended to offer the Zaks cash for the draperies but forgot in the chaotic confusion of moving day when the Zaks arrived half a day early and began moving into the home before the Parks could get their possessions out. The evidence showed that the value of the used draperies was minimal. The jury could justifiably have reasoned that the Zaks were more than adequately compensated by their premature occupancy of the home or could have believed the testimony of Mrs. Parks who said she later offered to return or pay for the draperies.

In summary, the demands of the Zaks stated in their letter manifest ill will, spite and considerably more desire to punish the Parks than to resolve any differences. From a review of the evidence we see no realistic basis for the claims of the Zaks against the Parks and find sufficient evidence in the record to support the jury's finding that the suit was brought in bad faith or for the purposes of harassment. Appellants, therefore, met both prongs of § 17.50(c), recited above. The trial court did not err in awarding the Parks attorneys' fees. Point of error five, six and seven are overruled.

■ In their eighth, ninth and tenth points of error appellants state that "[t]he trial court erred in entering judgment for

[the Parks] because as a matter of law [the Parks] expressly warranted to [the Zaks] that the house had 'no known latent structural defects,' ['no known defects' or no defects,'] making the jury's answer to issue no. 7 [10 and 13] clearly erroneous." In their response to these special issues the jury failed to find that the Parks had made any express warranties. Although appellants' statement of these points is somewhat confusing, under the liberal rules of construction, we interpret their points of error as asserting that the evidence conclusively established that the express warranties existed. To determine "matter of law" points, the appellate court must consider only the evidence and inferences that support the judgment and reject all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). *Mack v. Moore*, 669 S.W.2d 415, 418 (Tex. App.—Houston [1st Dist.] 1984, no writ).

The charge to the jury contained the following definition of express warranty:

## EXPRESS WARRANTY

In connection with Issues 7, 10 and 13, you are instructed that any affirmation of fact or promise made by a seller to a buyer which relates to the property sold and becomes a part of the basis of the bargain creates an express warranty that the property sold will conform to the description.

It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty. But an affirmation merely of the value of the property sold or a statement purporting to be merely the seller's opinion or commendation of the property sold does not create a warranty.

Application of this definition to the evidence supports the conclusion that there were no express warranties.

The Zaks allege that the Parks made both oral and written express warranties that the house had no defects. At trail the Parks denied having made such representa-tions. Whether the representations were made is not at issue in this appeal. At issue is whether either representation, if made, constituted an express warranty that the house had no defects.

■ A critical element of the definition of an express warranty is the requirement that the fact or promise made by the seller becomes "a part of the basis of the bargain." The representations upon which the Zaks rely were allegedly made before and during their first visit to the home. Clearly the Zaks did not accept the statements as absolute assurance that the house was free of defects. Before contracting to buy, Mr. Zak inspected the home four times; he asked another realtor to inspect the house twice; he hired Advance Inspection Services, Inc., to conduct a structural inspection; and he hired another professional to conduct a mechanical inspection to check pipes, faucets, drains and wiring. As a result of these inspections certain problems, including a major defect, the cracked foundation, were discovered. At the Zaks' request the Parks agreed to take care of minor repair to kitchen shoe molding. The more serious matter, the repair of the foundation, was negotiated. The earnest money contract represents the final compromise of the parties: an escrow fund of $2,300 was established by Mr. Parks. It is beyond dispute that by the time the parties signed the contract to buy, both the Zaks and the Parks knew that the house was not free of defects. Any earlier statement that the house had no defects did not become a part of the basis of the bargain. We find that the Parks did not expressly warrant as a matter of law that the house had no defects. Points of error eight, nine and ten are overruled.

Appellants contend in their eleventh, twelfth, and thirteenth points of error that as a matter of law (1) the Parks represented that the house was of a particular standard or quality, (2) Mrs. Parks made false and misleading statements, and (3) Mrs. Parks represented that all needed repairs had been done when they had not been

done. Therefore, appellants argue that the jury's failure to find that the Parks had misrepresented the home was clearly erroneous. As with the points of error dealing with express warranties, we interpret appellants' points eleven, twelve, and thirteen to be assertions that the evidence requires as a matter of law, a conclusion contrary to the verdict rendered. To determine "the matter of law" points we will consider only the evidence that supports the judgment. *Garza*, 395 S.W.2d at 823.

In support of their contentions, appellants rely upon facts which are disputed. They again raise the alleged oral and written representations, attributed to the Parks, that the house had no defects. Since the house later proved to have a cracked foundation and back yard flooding, the Zaks assert that as a matter of law the house was of a different quality than represented and that Mrs. Parks' statement that all repairs had been done was false and misleading. The Zaks also allege false and misleading statements were made when the Parks promised to leave certain household items that were not left. For the Zaks to prevail on these points there must be overwhelming evidence of their position. On the contrary, there is evidence that the repairs to which Mrs. Parks referred when she said, "All repairs have been done," were specific repairs—cosmetic sheetrock cracks and a cracked pool deck—and these repairs had in fact been accomplished at the time the statement was made. There is evidence that the Parks did not represent, either in writing or in conversation, that the house had no defects. There is evidence that before the purchase money contract was signed *all* parties were aware that the house was not free of defects; any statement that the house had "no defects" or that "all repairs have been done" had been contradicted before the contract was signed. Therefore, the Zaks could not have been misled by the statements. There is evidence that the Parks made no effort to conceal defects in the home. There is evidence that the hairline cracks in the sheetrock of which the Zaks complain are typical of most homes in the area, cannot be prevented, and are not "defects." There is evidence that standing water in the back yard occurred only after severe rains and the failure of the yard to drain immediately was not a defect. Finally, as for the items alleged to have been wrongfully removed from the house by the Parks, there is evidence that all but one of the items promised in the contract did remain in the home. There is evidence that Mrs. Parks offered to return or pay Mrs. Zak for the other item, the draperies removed from a child's bedroom.

■ Appellants have not met their burden to show that the evidence established as a matter of law that the Parks had misrepresented the home. Appellees' eleventh, twelfth and thirteenth points of error are overruled.

By their fourteenth and final point of error appellants attack the jury's finding of zero damages. Appellants contend that there was ample evidence of damages in the record and the jury erred in its answer to the special issue as a matter of law. In their argument appellants refer to expert opinion testimony of the diminished value of the home and expert opinion testimony as to the cost of foundation repair.

■ The special issue on damages asked the jury to find what sum of money would compensate the Zaks for damages, if any, caused by acts, words, conduct, breach of warranty and failure *of the Parks*. Before reaching the damage issue, the jury had answered all liability issues adversely to the Zaks. The Zaks also failed to obtain a jury finding that the house had defects. It is obvious from its answers to the special issues that the jury did not believe that any cost of repairs resulted from conduct of the Parks. Where the jury has found no liability, the issue of damages becomes immaterial. *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334, 335 (1939). We overrule appellants' fourteenth point of error.

The judgment of the trial court is affirmed.