Carter v. Shannon 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON MOTION FOR REHEARING


 




NO. 3-89-195-CV





MARVIN CARTER, ZELPHA CARTER, BEN E. GLASS AND ALTA E. GLASS,




 APPELLANTS


vs.





THOMAS FRANKLIN SHANNON AND JOY SHANNON,



 APPELLEES



 




FROM THE DISTRICT COURT OF BASTROP COUNTY, 355TH JUDICIAL DISTRICT



NO. 18,981, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING



 




 The opinion and judgment issued by this Court on May 8,
1991, are withdrawn, and the following opinion is filed in lieu of
the earlier one.

 Thomas Franklin Shannon and his wife, Joy Shannon,
appellees, purchased a parcel of undeveloped property in the City
of Elgin from Marvin and Zelpha Carter and Ben E. and Alta E.
Glass, appellants. After discovering that part of the lot would
flood during heavy rains, the Shannons successfully sued appellants
for violations of the Texas Deceptive Trade Practices and Consumer
Protection Act (DTPA), Tex. Bus. & Com. Code Ann. 17.41-.63 (1987
and Supp. 1991). Appellants challenge the judgment by sixty-one
points of error. In their barrage of points, appellants complain
of the admission of evidence, the submission of certain questions
and instructions, the failure to submit other questions, and the
insufficiency of the evidence, both legally and factually, to
support the jury's verdict. We will modify and affirm the
judgment.

 In May 1986 the Shannons purchased Lot 3 of the Carter-Glass subdivision. The appellants owned the subdivision, which the
Carters had begun developing in 1984. Lot 3 was not part of a
mapped flood hazard area. No streams crossed it, although runoff
from it collected in a small pond partially covering adjacent lots. 
At all relevant times, Lot 3 has remained substantially
undeveloped, having no gutters, curbs, drainage ditches, or
buildings.

 The Shannons based their suit on three misrepresentations
which they allege appellants made to them about Lot 3: (1) that it
received "a little bit" of runoff rather than the large quantitites
it actually received; (2) that the Shannons could dig a trench to
divert the runoff; and (3) that Lot 3 was a suitable site on which
the Shannons could build their house. The jury found that
appellants' misrepresentations regarding the nature and usefulness
of the lot had damaged the Shannons; in accordance therewith, the
court awarded the Shannons damages in the amount of $18,914.44,
prejudgment interest, and attorney's fees. Appellants complain of
almost every element of the trial in a series of grouped points of
error. Because of the plethora of points assigned, we will address
appellants' contentions by group rather than individually, as we
ordinarily would do. 

 In their first group of contentions, appellants assert
that the evidence is legally or factually insufficient to support
the jury's findings that Marvin Carter misrepresented Lot 3's
qualities and uses. Assuming these findings lack evidentiary
support, appellants argue there is a corresponding insufficiency of
evidence to support the jury's finding that one of the two
misrepresentations was a producing cause of the the Shannons'
injuries.

 In reviewing legal and factual sufficiency challenges
when the appellant has made both types of attack, we must first
determine whether some evidence supports the jury's findings. 
Calvert, "No Evidence" and "Insufficient Evidence" Points of Error,
38 Tex. L. Rev. 361, 369 (1960). Viewing the evidence in the light
most favorable to the appellant, we must consider only supporting
evidence and inferences and must disregard all contrary evidence
and inferences. Powers and Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence", 69 Texas L. Rev. 515, 522 (1991);
Renfro Drug Co. v. Lewis, 235 S.W.2d 609, 613 (Tex. 1950). If our
review discloses any evidence supporting the jury's findings, we
must uphold them. 

 Both the Shannons testified that Marvin Carter, in
showing them Lot 3 initially, had told them the lot received a
little bit of runoff but that it was, nevertheless, suitable for
home-building. In June 1987, after an unusually heavy rain, the
Shannons realized they would not be able to build their home on Lot
3 because more than three-quarters of it had been inundated during
the rain. They regarded the inundation as more than "a little bit"
of runoff. In addition to their own testimony that they felt they
could not safely live in a home on the lot because of potential
danger to their young children, the Shannons' experts also
testified that, assuming three-quarters of the lot would flood
during and immediately following heavy rains, the Shannons could
not possibly build the house they wanted on Lot 3. This testimony
constitutes some evidence that Mr. Carter represented that Lot 3
had was of a particular quality when it was not and that the
Shannons could use it for house-building when they could not. We
therefore overrule appellants' first, second, and third points of
error.

 In deciding a factual sufficiency point, we must examine
all the evidence on an issue. We may conclude that the jury has
erred only if its finding is so against the great weight and
preponderance of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re
King's Estate, 244 S.W.2d 660, 661-62 (Tex. 1951).

 In addition to the testimony of the Shannons and their
expert that Lot 3 was prone to flooding and was not suitable for
building, the evidence on misrepresentation included Mr. Carter's
testimony that he had told the Shannons that Lot 3 received "quite
a bit of water." His statement directly contradicts that of the
Shannons. Therefore, the jury had to determine which of the
witnesses was the more credible and make its finding accordingly. 
We cannot say, after reviewing all the evidence, that the jury was
clearly wrong or manifestly unjust in concluding Mr. Carter had
represented the lot to be of a particular quality when it was of
another. We do not find the jury's decision to be against the
great weight and preponderance of the evidence and, therefore,
overrule appellants' complaint in that regard.

 Mr. Carter readily admits telling the Shannons that Lot
3 was suitable for their use as a home site. He maintains,
however, contrary to the Shannons and their expert, that it is
still suitable for home-building in spite of the flooding problem. 
Apparently, appellants contend that as long as there some manner in
which one could build a house on Lot 3, Mr. Carter's statement that
the lot was suitable for home-building was not a misrepresentation. 
We need not determine whether there was factually insufficient
evidence to support the jury's finding in this regard. The
producing cause question allowed the jury to make an affirmative
finding based on a "yes" answer to any one of the three
misrepresentation questions. Because we have already determined
that the jury based its answer to Question 1A on sufficient
evidence, no harm could result even from an improper finding that
Mr. Carter misrepresented the use to which Lot 3 could be put. We
overrule appellants' first group of points.

 By their second group of points, appellants challenge the
legal and factual sufficiency to support the jury's finding that
Mr. Carter failed to disclose to the Shannons that Lot 3 had
previously flooded when he discussed the sale with them. 
Appellants contend there is no direct evidence that they knew the
lot had flooded in the past. They admit, however, that some facts
would support an inference of such knowledge. This being the case,
we overrule their legal sufficiency points.

 The Shannons introduced records showing rainfall amounts
for the five years during which appellants had lived in Elgin. 
During at least three of these five years, heavy rain had fallen on
several occasions. In addition, for the preceding four years the
Carters lived in a house adjacent to Lot 3. There was evidence
that one can see Lot 3 from the Carters' driveway. Further, Mrs.
Carter admitted a heavy rain had fallen during the construction of
the subdivision's roads. The rainfall had been of such unusual
strength that the Carters had been concerned it would wash out the
fill they had just brought in. During this same deluge, Rev.
Sullivan's slabwork, being laid on the lot adjacent to Lot 3, was
partially destroyed by the runoff undercutting it. Mrs. Carter
testified that she stood next to Rev. Sullivan's slabwork and
looked at its damage. From these facts, the jury could reasonably
have inferred that appellants had had an opportunity to observe and
had actually observed Lot 3's flooding before selling it to the
Shannons. We overrule appellants' factual sufficiency challenges
to the jury's finding of failure to disclose.

 In their fourth group of points, appellants contend there
is legally and factually insufficient evidence to support the
jury's findings that appellants had charged a purchase price in
excess of the fair market value for Lot 3 and, consequently, that
the Shannons had suffered damages in the amount of $18,914.44. 
Appellants also challenge the admission of certain experts'
opinions of Lot 3's fair market value. 

 The Shannons offered an appraiser's testimony to show
that, because of its hidden problem, Lot 3 had a market value lower
than the purchase price the Shannons had paid appellants. Although
the appraiser, Mr. Jeffcoat, concluded the property would have been
worth what the Shannons had paid for it if it had not been subject
to flooding, he told the jury that an appraiser would value Lot 3
at a much lower rate because of the flooding stigma attaching to
property known to flood. In addition, he testified that the lot
was also devalued by the necessity of doing fill work on the lot
before being able to build a house there. 

 Appellants object to Jeffcoat's opinion primarily because
they complain it is not based on information reasonably relied on
by experts in the field as required by Tex. R. Civ. Evid. 703
(1991). Jeffcoat relied on two types of information in making his
decision: (1) statements about Lot 3 made to him by Mr. Rogers, an
engineer, and one of the Shannons' other experts: and (2) the
Multiple Listing Service, a publication showing the purchase prices
of homes in the Austin area. Jeffcoat used the latter information
to compare the purchase prices of lots known to flood both before
and after the flooding in order to show the percentage diminution
in value to be expected once it becomes known the property floods. 
Appellants complain that the only permissible method of showing
diminution in value is by demonstrating a corresponding diminution
in value to lots in the same area with the same or a similar
problem. We do not agree. 

 Jeffcoat testified that he was not attempting to
establish a correlation between any change in the market value of
the homes listed in the Multiple Listing Service and Lot 3;
instead, he was trying to show that, in either instance, a decrease
in purchase price would result from the stigma attached to property
known to have flooding tendencies. Jeffcoat determined that the
Shoal Creek homes' selling price diminished anywhere from 30% to
40% because of the flooding experienced in that area. Because he
subjectively assessed the Elgin flooding situation as being much
less severe than that in the Shoal Creek area, Jeffcoat allowed for
a 20% reduction in market value for Lot 3 rather than the 30% or
40% he would have allowed for a property in the Shoal Creek area. 
Because Jeffcoat's diminution-in-value opinion was based on the
general stigma attaching to property which floods rather than on
the damages likely to result because of a specific flood hazard, we
cannot say that the court abused its discretion in allowing
Jeffcoat to consider evidence of the purchase prices of other lots
in forming his opinion. 

 Many times during his testimony, Jeffcoat stated that
appraisers routinely rely on the Multiple Listing Service as the
basis of various appraisal opinions. Although appellants offered
evidence to the contrary, whether given information is of a type
reasonably relied on by experts in the field is a matter for
preliminary determination by the trial court. See Tex. R. Civ.
Evid. 104(a); Moore v. Polish Power, Inc., 720 S.W.2d 183, 192
(Tex. App. 1986, writ ref'd n.r.e.). The court did not abuse its
discretion in concluding that Jeffcoat could base his opinion on
information reasonably relied on by experts in the field; we
overrule all of appellants' points relating to the opinion's
admission.

 Appellants next complain that no evidence or insufficient
evidence supports the jury's finding that Lot 3's fair market value
on the day of sale was $10,000. Jeffcoat explained in great detail
how he had come to assign his particular determination of market
value to Lot 3. First, Lot 3 would have carried an estimated
market value of $25,000 had it not had the flooding problem. 
Jeffcoat then reduced the $25,000 figure to reflect an "as is"
market value for Lot 3 on the date of sale. From the $25,000,
Jeffcoat deducted: (1) $11,000 for lot preparation for house-building; (2) $5,000 for the stigma attaching to a parcel known to
flood; and (3) $4,500 for the half of the lot which Jeffcoat
assumed it would not be possible to use during a heavy rain. 

 The jury would have been entirely within its authority to
find either of the last two components to be unreasonable
deductions; if they had decided the market value was actually
higher than the amount Jeffcoat had assigned to the property, they
could have refused to reduce the purchase price by either of the
sums and awarded the Shannons an amount in excess of what the
Shannons sought in damages. They did not. Therefore, we overrule
appellants' legal sufficiency challenge to the finding that Mr.
Carter's misrepresentations were the producing damages to the
Shannons in the amount of $18,914.44. Our review of all the
damages evidence convinces us that the jury's findings on those
issues and on causation were correct. Although both issues
involved disputed facts, the jury's determinations were not so
against the great weight and preponderance of the evidence as to be
clearly wrong or manifestly unjust. We overrule appellants'
factual sufficiency points in these regards. 

 By their seventh group of points, appellants complain of
the court's refusal to allow them to offer proof of the Shannons'
alleged failure to give proper notice of their claim. They also
contend that the court erred in refusing to grant their plea in
abatement urged for the same reason and in refusing to submit a
jury question seeking a jury resolution of the proper notice issue. 
DTPA § 17.505(a) required the Shannons to send appellants notice of
their claim before filing suit. That section provides, in relevant
part:



As a prerequisite to filing a suit seeking damages under
Subdivision (1) of Subsection (b) of Section 17.50 of
this subchapter against any person, a consumer shall give
written notice to the person at least 60 days before
filing the suit advising the person in reasonable detail
of the consumer's specific complaint and the amount of
actual damages and expenses, including attorneys' fees,
if any, reasonably incurred by the consumer in asserting
the claim against the defendant. 


 On July 6, 1987, the Shannons' attorney sent appellants
a letter specifically advising them that the Shannons considered
Mr. Carter's statements, made to them during the attempted sale of
Lot 3, to have been misrepresentations and, therefore, violations
of the DTPA. The July 6, 1987, letter also advised appellants that
the Shannons had incurred certain specific costs because of the
violations; the letter enumerated individual costs and apprised
appellants of the total sum the Shannons claimed as damages. After
receiving an unsatisfactory reply from appellants' counsel, the
Shannons filed suit October 14, 1987.

 The demand letter was unquestionably sent and received in
a timely manner; more than the requisite 30 days passed between the
demand letter's date and filing of suit. Appellants argue that,
because the Shannons did not include an offer to reconvey Lot 3 or
a request for rescission of their warranty deed in their demand
letter, they have not effected a proper or good faith demand. 
Apparently, appellants' position is that, until appellants were
persuaded that the Shannons were making a good faith offer to
settle, appellants were entitled to an abatement of the action. 
Barring abatement, appellants assert a right to present evidence of
"improper" notice and to obtain a jury finding that the notice
given did not comply with § 17.505(a). We do not agree. 
§ 17.505(a) requires only that a demand letter notify a seller of
his consumer's specific complaint in reasonable detail and of the
amount of actual damages and expenses sought, including attorneys'
fees. Jim Walter Homes, Inc. v. Valencia, 690 S.W.2d 239, 242
(Tex. 1985). The demand letters in this case have done both of
those things. 

 Appellants rely on Zak v. Parks, 729 S.W.2d 875 (Tex.
App. 1987, no writ), for the proposition that a demand not made in
good faith fails to comply with § 17.505(a). Therefore, they claim
they are entitled to abate the proceedings until the Shannons make
a good faith demand or, in the alternative, that they should have
been permitted to show at trial that the Shannons never gave proper
notice. Appellants have misread Zak. That case does not deal with
a seller's ability to obtain an abatement or the admission of
evidence of the buyer's failure to give proper notice, but with
claims being brought in bad faith or being made solely for purposes
of harrassment. The Zak court did conclude that the buyer had made
the demand with "manifest ill will"; however, the opinion by no
means implies that § 17.505(a) imposes an affirmative duty on
consumers to make a demand which sellers would consider to have
been made in good faith. Appellants cite no authority for the
proposition that a demand for money damages without a corresponding
offer to reconvey property constitutes bad faith as a matter of
law. Nor, under the circumstances here, have appellants shown that
the omission of an offer to reconvey or rescind the warranty deed
was even deliberate. We overrule this group of appellants' points.

 Appellants' ninth group of points concerns an expert
witness, Mr. Roland. During discovery, appellants apparently
responded to one of the Shannons' interrogatories by designating
Roland as an expert. After the Shannons' counsel had deposed
Roland, appellants decided not to elicit his testimony at trial. 
At some point after the deposition but before trial, the Shannons
decided to subpeona Roland to ensure his presence. When Roland
arrived and the Shannons called him to testify, appellants objected
that the Shannons had not designated the witness as their expert in
response to interrogatories requesting such a designation;
therefore, appellants argued, the Shannons were prohibited from
calling Roland as a witness. After hearing argument from both
sides, the court allowed Roland to testify. The appellants claim
this action constitutes reversible error.

 In order to obtain reversal of a judgment, the party
seeking review bears the burden of showing that the judgment is
erroneous. The Englander Co. v. Kennedy, 428 S.W.2d 806, 807 (Tex.
1968); Temple v. Dull, 640 S.W.2d 639 (Tex. App. 1982, no writ). 
Appellants also have the burden of making the appellate record for
the reviewing court to consider and on which it must base its
determination of reversible error. Woodruff v. Cook, 721 S.W.2d
865, 871 (Tex. App. 1986, writ ref'd n.r.e.); Evans v. State Farm
Mutual Auto Ins. Co., 685 S.W.2d 765, 768 (Tex. App. 1985, writ
ref'd n.r.e.). 

 Appellants here have not included in the appellate record
either their interrogatories or the Shannons' answers to the
interrogatories. Furthermore, the page in the statement of facts
to which appellants refer in their brief does not indicate that the
trial court examined the interrogatories or answers thereto before
ruling. As the court in Temple observed: "We cannot review the
terms of a[n interrogatory answer] which is not before us." 640
S.W.2d at 639. 

 In addition, the court inquired into the substance of
Roland's testimony. After the Shannons' counsel summarized the
testimony he wanted to elicit from Roland, the court made the
following comment:



That's really no different than the testimony of other
witnesses and their opinion that three-quarters of the
lot was covered or two-thirds.


* * *


I don't see that that's going to make a whole bunch of
difference really. 



Thereafter, the court permitted Roland to testify and give his
opinion about the extent to which the land flooded, over
appellants' objection.

 Appellants urge us to hold that it is impermissible to
serve a subpeona on an opposing party's expert without having
designated him as an expert. We express no view on that question. 
In addition to failing to carry their burden of showing the court's
error in allowing the subpeona to issue, appellants have not shown
harm resulting to them from Roland's testimony. See Tex. R. App.
P. 81(b). The erroneous admission of cumulative evidence is not
harmful. Pyle v. Southern Pacific Transp. Co., 774 S.W.2d 693
(Tex. App. 1989, writ den.). Even when improperly admitted
evidence is an expert's opinion, the error will be considered
harmless if the objecting party has previously permitted the
introduction of similar evidence without objecting. Birchfield v.
Texarkana Memorial Hosp., 747 S.W.2d 361, 365 (Tex. 1987); see also
Persons v. Persons, 666 S.W.2d 560, 564 (Tex. App. 1984, writ ref'd
n.r.e.). As the trial court correctly concluded, before the
Shannons called Roland to testify, other evidence had been admitted
on the matters on which he would offer evidence; therefore,
admitting his testimony, even if error, was not harmful. We
overrule this group of arguments.

 In their tenth group of points, appellants complain about
certain portions of Mr. Shannon's testimony. Appellants argue that
Mr. Shannon had no personal knowledge of the following matters and
that, therefore, the court should not have allowed him to testify
that: (1) Lot 3 was two-thirds to three-quarters inundated during
the heavy rains; (2) one could see the flooding of Lot 3 from the
Carters' kitchen window; (3) particular quantities of rain fell on
particular dates; and (4) that Lot 3 had a certain market value at
the time of sale or thereafter. We have reviewed Mr. Shannon's
testimony and conclude that, even assuming appellants' contentions
are correct, they have shown no harm from any error. See Tex. R.
App. P. 81(b)(1) (1991). We therefore overrule this group of
points in its entirety.

 Appellants' twelfth group of points dispute the propriety
of the trial court's permitting the Shannons to call Gary Cooke,
the Elgin Public Works Director, to testify. The Shannons called
Mr. Cooke in rebuttal to another of the Shannons' witnesses who had
unexpectedly attributed Lot 3's flooding problem to drainage work
begun after the date of sale. Appellants claim Mr. Cooke's name
was not disclosed in response to a proper interrogatory seeking the
names of persons with knowledge of relevant facts. Therefore, they
argue, he should not have been allowed to offer rebuttal testimony.

 As we have noted, appellants bear the burden of showing
error on appeal. As we have also previously observed, appellants
have failed to include in their transcript for this Court any
interrogatories sent or responses made. Without either the
interrogatories or the responses, we cannot know whether appellants
are correct in their assertion that the Shannons did not disclose
Mr. Cooke's name in answer to an appropriate interrogatory. We
therefore overrule appellants' complaints about Mr. Cooke's
testimony.

 As their final challenge, appellants argue that the trial
court erred in admitting evidence of Mr. Carter's character for
truthfulness while at the same time excluding evidence allegedly
probative of Mr. Shannon's lack of character for truthfulness. 
Specifically, appellants claim it was error for the court to permit
two witnesses, Judge Raesz and Rev. Sullivan, both Carter-Glass
subdivision residents, to testify that Mr. Carter had a bad
character for truthfulness. In addition, appellants claim that
Judge Raesz and Rev. Sullivan improperly based their opinions of
Mr. Carter on business dealings they had had with Mr. Carter rather
than on personal relationships. Appellants also argue the court
erred in refusing to permit them to show Mr. Shannon's prior
convictions for passing a forged check and for aggravated assault
with a deadly weapon. 

 Texas Rule of Civil Evidence 609(a) governs the
admissibility of prior criminal convictions in a civil suit and
provides:



For the purpose of attacking the credibility of a
witness, evidence that he has been convicted of a crime
shall be admitted if elicted from him or established by
public record but only if the crime was a felony or
involved moral turpitude, regardless of punishment, and
the court determines that the probative value of
admitting this evidence outweighs its prejudicial effect
to a party.


(Emphasis added.) The decision to admit evidence of a prior
conviction lies within the trial court's discretion. Landry v.
Travelers Ins. Co., 458 S.W.2d 649, 651 (Tex. 1970). We will not
disturb the exercise of discretion absent some showing by the
appellants that exclusion of the conviction was unreasonable or
arbitrary. Id. Convictions may fall anywhere on the time
spectrum. Some are so remote as to be inadmissible as a matter of
law; some are so close in time that it would always be error to
exclude them on that basis. However, some convictions necessarily
fall in the grey area of remoteness lying between the two extremes. 
In that event, the admissibility of the conviction is within the
sole discretion of the trial court. Id.; Harker v. Coastal
Engineering, Inc., 672 S.W.2d 517, 522 (Tex. App. 1984, writ ref'd
n.r.e.). Although Harker reiterates a pre-Rule holding, we
conclude that Rule 609(a) does involve a balancing test for the
trial court; the court must weigh the probative value of the
conviction against its prejudicial effect on the party before
admitting it, even if the conviction falls within the 10-year
remoteness limit imposed by Rule 609(b).

 Mr. Shannon's most recent felony conviction was nine
years old at the time of trial; he had completed nine out of the
ten years' probation to which he had been sentenced. During those
nine years, he had not committed another offense or had his
probation revoked by the State. In addition, the more recent
felony (assault) was one going to his character for acting
violently, not one going to the issue of truthfulness. Under these
circumstances, we conclude the trial court did not abuse its
discretion by concluding that the probative value of Mr. Shannon's
convictions did not outweigh their prejudicial effect. We overrule
appellants' points on Mr. Shannon's prior convictions.

 Appellants also complain that the court erred in
permitting Rev. Sullivan and Judge Raesz to give their opinions of
Mr. Carter's character for truthfulness. Appellants contend that
both witnesses had previously demonstrated their lack of knowledge
about Mr. Carter's reputation for truthfulness within the community
and that their opinions were, therefore, impermissibly based on
their individual business dealings with him.

 Judge Raesz testified during the Shannons' case-in-chief,
stating what he knew about Lot 3's water level during heavy rains
and offering his opinion that the lot would be unsuitable as a
building site for the primary residence of several young children. 
After Mr. Carter testified during defendants' case-in-chief, the
Shannons recalled Judge Raesz to the stand for the specific purpose
of offering his opinion of Mr. Carter's character for truthfulness. 
The following ensued:



MR. LOCKWOOD (The Shannons' counsel): Do you have an
opinion, sir, as to the character of Marvin Carter for
truthfulness?


MR. WILLIAMS (Appellants' counsel): Your Honor, I'm
going to object to that on the basis that the witness has
previously testified on that issue and it's clear from
his testimony that what he based that on is not -- not
his opinion as to truthfulness but whether as to honesty
and veracity and those are not character issues that --
character traits that are at issue in this trial.


THE COURT: Ask the question again.


MR. LOCKWOOD: Do you have an opinion, sir, as to the
character of Marvin Carter for truthfulness?


MR. WILLIAMS: I object again, Judge.


THE COURT: And -- 


MR. WILLIAMS: Your Honor, the witness has previously
made clear that his answer to that is based upon certain
things which indicate that his opinion is an opinion as
to honesty, not as to truthfulness. Honesty is not a
character trait here. It is different from truthfulness. 
And I'm going to object for that reason.


THE COURT: You want to ask him about truthfulness?


MR. LOCKWOOD: That's what I did ask him.


THE COURT: Okay.


MR. WILLIAMS: And I'm objecting.


THE COURT: Would you rather have honesty?


MR. WILLIAMS: No, sir. Our point is that this witness
shouldn't be here at all. Honesty is not a character
trait that is at issue in this case. Truthfulness,
according to this witness' previous deposition, his
opinion is based upon things which indicate that it is,
in fact, an opinion as to honesty. So he's already
testified that he essentially does not have an opinion as
to truthfulness but rather as to honesty. Although it
may sound weird to the Jury, the law recognizes a
difference between those two character --


THE COURT: Do you have an opinion as to truthfulness?


THE WITNESS: I do.


MR. WILLIAMS: May I have a ruling --


THE COURT: Yes. Overruled.


MR. WILLIAMS: -- on my objection?


THE COURT: Yes.



The above-cited colloquy preserves for our review only the question
of whether Judge Raesz was actually offering an opinion of Mr.
Carter's character for truthfulness rather than an opinion of his
character for honesty. Appellants' counsel made no objection that
Judge Raesz had an improper basis for his opinion. In addition,
the exchange between the court, the witness, and the two counsel
indicates that the witness knew he was being asked to offer his
opinion as to truthfulness rather than honesty. We overrule
appellants' contentions with respect to the admission of Judge
Raesz' opinion.

 The Shannons had also called Rev. Sullivan to testify
during their case-in-chief about certain events taking place within
the subdivision. After Mr. Carter testified, the Shannons recalled
Rev. Sullivan for the express purpose of obtaining his opinion of
Mr. Carter's character for truthfulness. Appellants' counsel
explored Rev. Sullivan's basis for his opinion on voir dire and
established that the pastor was basing his opinion solely on
personal experience. However, appellants' counsel did not object
to Rev. Sullivan's lack of basis for his opinion, but to his
alleged attempt to testify to an opinion about character for
honesty rather than truthfulness. Appellants have, therefore,
failed to preserve any error that might have resulted to them from
Rev. Sullivan's opinion of Mr. Carter as having an untruthful
character. Further, the exchange between court and counsel made
clear to the witness and the jury that Rev. Sullivan was offering
his opinion of Mr. Carter's character for truthfulness rather than
for honesty. We overrule appellants' complaints about Rev.
Sullivan's opinion testimony.

 Appellants also contend that the trial court erred in
permitting Rev. Sullivan to testify about specific instances in
which Mr. Carter may have exhibited untruthful tendencies. The
following exchange is the basis for this complaint:



MR. LOCKWOOD (The Shannons' counsel): Specifically, sir,
did Mr. Carter's lack of truthfulness have to do with
something with the sale of the lot in the Carter-Glass
subdivision?


MR. WILLIAMS: Your Honor, I object to that as getting
into specific instances of conduct.


THE COURT: I'm going to let him answer that question,
but that's as far as we're going to go.


THE WITNESS: Would you ask it again, please?


MR. LOCKWOOD: Yes, sir. Did Mr. Carter's conduct about
which you've -- with regard to which you formed your
opinion as to his lack of truthfulness have something to
do with anything relating to the Carter-Glass
subdivision?


THE WITNESS: Yes.



At this point, rather than reurging his objection, appellants'
counsel began his cross-examination of the witness as follows:



MR. WILLIAMS: Are you absolutely sure that it had
something to do with the subdivision?


THE WITNESS: It was a representation made to me in order
to sell me a lot in the subdivision.



This exchange leaves us no choice but to conclude that appellants
opened the door to the testimony of which they now complain. We
overrule this and all of appellants' other complaints related to
the admission of character evidence.

 Appellants have several other points of error. We have
reviewed them, find them to be without merit, and overrule them.

 By cross-point, appellees assert that the trial court
erred by denying them permission to amend their petition after the
verdict but before the judgment. Appellees had moved to amend so
that their pleadings would support the award of pre-judgment
interest at a 10% rate rather than the 6% pleaded. Appellees first
contend that they were entitled to the 10% award because they
succeeded on their DTPA claim. We agree that they were entitled to
receive pre-judgment interest at the 10% rate. See Tex. Rev. Civ.
Stat. Ann. art. 5069-1.05, § 2 (Supp. 1991); McCann v. Brown, 725
S.W.2d 822, 826 (Tex. App. 1987, no writ). 

 Second, appellees claim the trial court lacked the
discretion to prevent them from so amending their petition because
Rule 66 of the Texas Rules of Civil Procedure provides, in part: 



If . . . during the trial any defect, fault or omission
in a pleading, either of form or substance, is called to
the attention of the court, the court may allow the
pleadings to be amended and shall do so freely when . . .
the objecting party fails to satisfy the court that the
allowance of such amendment would prejudice him . . . .



Tex. R. Civ. P. 66.

 The supreme court recently reaffirmed the proposition
that a party's right to file a trial amendment is subject only to
the opposing party's right to show prejudicial surprise. 
Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 940 (Tex.
1990). Appellees argue that, in the present case, appellants could
not have been surprised by the trial amendment because they could
not have altered their trial strategy to prevent recovery of pre-judgment interest at a rate higher than six percent. In essence,
appellees argue that, as a matter of law, appellants could not
suffer prejudicial surprise from the requested amendment. We
agree. Accordingly, we conclude that the trial court abused its
discretion by denying appellees' requested trial amendment. We
sustain appellees' cross-point.

 We modify the trial court's judgment to permit appellees
to recover 10% pre-judgment interest and, as modified, affirm.



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Modified and, as Modified, Affirmed

Filed: June 19, 1991

[Do Not Publish]